**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

REBECCA HOLBROOK LOAR,

Plaintiff,

v. Case No. 3:26-cv-01893-JEP-LLL

THE SCHOOL BOARD OF

DUVAL COUNTY, FLORIDA,

Defendant.

_____________________________________/

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Rebecca Holbrook Loar sues Defendant The School Board of Duval County, Florida, and alleges:

## NATURE OF THE ACTION

1. This is a civil-rights action under 42 U.S.C. section 1983 arising from a public agency's retaliation against a private citizen who reported educator misconduct, publicly criticized the agency's failure to act, and petitioned for public records documenting those failures.

2. Within weeks of Plaintiff's March 23, 2023 public statements and March 28, 2023 records request, the Defendant produced only part of the already compiled Clayton records and quoted an approximately $5,009.12 special service charge for further production. After Plaintiff narrowed her request, the

Defendant restated item 6 more narrowly than she had requested and continued withholding records, while comparable requesters received Clayton records promptly and without comparable fees. After this action was filed, the Defendant closed NextRequest No. 26-811 by representing that no records exist as to a category of records that the Florida Department of Education Office of Inspector General had documented as deleted and later recovered from cloud backup.

**JURISDICTION AND VENUE**

3. This Court has subject-matter jurisdiction under 28 U.S.C. sections 1331 and 1343 because Plaintiff's claims arise under 42 U.S.C. section 1983 and the First and Fourteenth Amendments to the United States Constitution.

4. Venue is proper under 28 U.S.C. section 1391(b) because the Defendant resides in this District and the events giving rise to the claims occurred in Duval County, Florida.

**PARTIES**

5. Plaintiff Rebecca Holbrook Loar is a former vocal-music teacher at Douglas Anderson School of the Arts, a public school operated by the Defendant. She worked for the District from about August 2007 until approximately June 2012. Plaintiff was not employed by the Defendant when she engaged in the protected activity or when the retaliation occurred.

6. The Defendant, the School Board of Duval County, Florida, governs Duval County Public Schools, is a political subdivision of the State of Florida, and is

a "person" subject to suit under 42 U.S.C. section 1983. The Defendant is a locally controlled entity, not an arm of the State of Florida, and is not entitled to Eleventh Amendment immunity. See Travelers Indem. Co. v. Sch. Bd. of Dade Cnty., 666 F.2d 505, 509 (11th Cir.), cert. denied, 459 U.S. 834 (1982). At all relevant times, the Defendant acted under color of state law and served as the District's final policymaker for public-records compliance and records retention.

## FACTUAL ALLEGATIONS

**A. Background: Plaintiff's employment and employee-era report.**

7. Plaintiff pleads her employee-era report as background, not as independent protected activity. The report shows that the Defendant knew Plaintiff had reported Clayton's alleged misconduct, understood the subject matter of her later citizen speech, and knew her connection to the records she later requested. The Defendant's public-records response acknowledging Plaintiff's prior report further confirms that knowledge.

8. Plaintiff began teaching in Douglas Anderson's vocal department in about August 2007.

9. In 2011, while still employed, Plaintiff was called to the principal's office in connection with an Office of Professional Standards investigation into Jeffrey Clayton that had been prompted by a complaint from the parents of a Douglas Anderson student. Plaintiff met with the Office of Professional Standards investigator, John McCallum, concerning her work environment, and was

asked to submit a written statement about Clayton to the principal, Jackie Cornelius, who would forward it to the investigator. Plaintiff submitted the statement, which documented inappropriate behavior by Clayton toward female students and conduct by administrators. Plaintiff later learned the copy entrusted to the principal was missing and was required to recreate it. No corrective action followed, and Clayton remained in the classroom for another eleven years.

10. Plaintiff's employment with Defendant ended in or about June 2012.

**B. Plaintiff's protected citizen speech, 2013 to 2023.**

11. After her employment ended, Plaintiff continued to report Clayton's inappropriate behavior and the Defendant's failures to act as a private citizen, not as a DCPS employee or under any employment duty.

12. In or about January 2013, Plaintiff was called in by an official then serving in the District's Office of Professional Standards and interviewed at length, from the morning until after 5:00 p.m., concerning Jeffrey Clayton. The interviewer took extensive notes of that interview, which the District has not produced. The Defendant took no adequate corrective action.

13. On or about June 19, 2020, Plaintiff, as a private citizen employed by a university in another state, emailed Superintendent Diana Greene about Clayton and attached her recreated report. Within hours, the Superintendent forwarded the report to senior staff. On June 22, 2020, the Defendant responded over the Superintendent's signature, acknowledged the report,

stated that the matter had been "forwarded to the appropriate district office for review and possible additional investigation," and directed Plaintiff to the Executive Director of the Office of Equity and Inclusion and Professional Standards. At least six high-level district officials received Plaintiff's 2020 report within days. The Defendant nonetheless took no adequate corrective action, and Clayton remained in the classroom.

14. In or about 2022, Plaintiff reported Clayton to DCPS investigator Harry Cigliano as a private citizen. The Defendant took no adequate corrective action.

15. Jeffrey Clayton was arrested on March 22, 2023, for lewd and lascivious conduct involving a current student.

16. On March 23, 2023, Plaintiff spoke publicly to the news media about the Defendant's handling of reports concerning educator misconduct and student safety, including her own repeated reports over more than a decade. In an interview with First Coast News, Plaintiff stated that she had first reported Clayton's conduct approximately twelve years earlier, had done so "again and again," and that the matter "hasn't been a sleeping giant," but rather "something the district has been aware of" and as to which "actions have not been taken appropriately."

17. On or about March 28, 2023, days after Clayton's arrest, Plaintiff submitted a Chapter 119 public-records request, PRR-BeckyLoar-3-28-2023, seeking

district records concerning Jeffrey Clayton and her own prior reports of him. She submitted the request as a private citizen.

18. Plaintiff's speech and petitioning concerned the conduct of a public school district, its handling of reports of educator misconduct toward students, and the safety of students in its schools. That speech addressed matters of public concern and is protected by the First Amendment.

19. The Defendant retaliated as a public agency administering Florida's public-records laws against a private citizen, as Plaintiff was not a DCPS employee when she spoke to the media, requested records, or suffered retaliation.

**C. The Board's handling of Plaintiff's records request.**

20. On or about April 26, 2023, the Defendant demanded approximately $5,009.12 as a condition of further production, warned that the request would be closed if the charge went unpaid, and advised that additional charges might follow.

21. Plaintiff could not afford the charge. On April 27, 2023, she narrowed the request to the records Plaintiff considered most important, and on April 28, 2023, the Defendant reduced the estimate to $31.78.

22. Plaintiff's inability to pay the quoted special service charge forced her to narrow her request, as alleged in paragraph 21. In the course of reducing the estimate, the Defendant restated item 6 so as to limit responsive emails to those related to the Florida Department of Education. That limitation was narrower than the item 6 Plaintiff had submitted: it did not appear in her

original March 28, 2023 request or in the Defendant's own April 20 and April 26, 2023 descriptions of the request, and it excluded non-DOE internal communications that could have shown what was deleted, recovered, or withheld. The restriction arose during the same period later addressed by the Florida Department of Education Office of Inspector General report documenting the deletion of Clayton-related files and public records. The Defendant thereafter treated the restated, DOE-only language as Plaintiff's request when it declared the request complete on September 21, 2023.

**D. Comparators received the same Clayton records promptly and at little or no charge.**

23. The Defendant's records reflect that Clayton's disciplinary records and personnel file were compiled on or about April 19, 2023. The Defendant produced a partial set to Plaintiff on April 20, 2023, the same date it closed the comparator requests identified in paragraphs 26 and 28 by producing Clayton personnel and disciplinary records at no charge. Days later, the Defendant demanded approximately $5,009.12 from Plaintiff for further production of the same categories of records.

24. During the same period, numerous other requesters sought the same Clayton personnel, disciplinary, and investigative records from the same records custodian, concerning the same educator and the same public controversy. They received those records promptly and at little or no charge. The Defendant's own public-records log, which the District captioned its "Clayton

PRR media and law firms" list, identifies these requesters and their treatment, including the following:

25. Dan Scanlan of WJCT requested Clayton's personnel file on March 22, 2023, and received it the same day, at no charge;

26. Lauren Inderhees of First Coast News requested Clayton's discipline records on April 13, 2023, and received them on April 20, 2023, at no charge;

27. Claire Heddles (WJCT), Anne Maxwell (News4Jax), Leslie Coursey (Action News Jax), Mike Kaminski (First Coast News), and Maria Hernandez (First Coast News) each requested Clayton's personnel or disciplinary records in the same March 2023 period and received them within approximately one month, at no charge;

28. The Morcom law firm requested Clayton's file and received it within approximately fifteen days, at no charge. The Defendant closed the Morcom request and the April 13, 2023 First Coast News request identified above on April 20, 2023, after producing Clayton personnel and disciplinary records at no charge.

29. In addition, another Douglas Anderson parent requested the same Clayton records during the same period and received them within weeks, while Plaintiff's request for the same records remained open, subject to the $5,009.12 special service charge, for approximately twenty-two months, until production on or about February 12, 2025.

30. The Defendant's public-records log reflects that, during the covered period, no other requester was charged more than approximately $883.16 for such records. The Defendant produced Clayton personnel, disciplinary, and investigative records to news organizations, law firms, and another parent promptly and at little or no charge, while quoting Plaintiff an approximately $5,009.12 special service charge for further production of Clayton records it had already compiled.

31. These requesters were similarly situated to Plaintiff in all relevant respects. Each sought the same category of Clayton records from the same custodian, concerning the same educator and public controversy, during the same period, and by the same means. The requests cannot reasonably be distinguished from Plaintiff's. The material difference was that Plaintiff had repeatedly reported Clayton over more than a decade and had publicly criticized the Defendant's handling of him.

32. The records were, by the Defendant's own treatment, freely and promptly releasable, and no legitimate basis supported the disparate charge imposed on Plaintiff. The Defendant released the same Clayton personnel and disciplinary records to the requesters above at no charge, on the basis that Clayton was a former employee who had resigned, such that any investigation had ceased to be active and the records were no longer exempt under section 119.071(2)(k), Florida Statutes. The Defendant applied no such treatment to Plaintiff, instead

conditioning production on the $5,009.12 special service charge and withholding the same records from her for approximately twenty-two months.

**E. Deletion, recovery, and nonproduction of records.**

33. The Florida Department of Education Office of Inspector General Investigative Report 2023-0003 documents that the Defendant's District Office of Professional Standards supervisor deleted approximately 290 files between January 24 and April 24, 2023, including public-records requests, educator-misconduct reporting forms, and multiple documents concerning Jeffrey Clayton.

34. The report further states that the supervisor entered the building between approximately 3:50 a.m. and 4:21 a.m., while Plaintiff's request was pending, and that the Defendant's chief legal counsel later told the Inspector General the deleted files were recovered from cloud backup.

35. Plaintiff does not allege the deletion alone as the constitutional violation. The deletion, recovery, and continued nonproduction show that records responsive to Plaintiff's March 28 request existed or could be retrieved, including Clayton-related and public-records files. Yet the Defendant did not produce those records to the requester who publicly criticized its handling of Clayton, did not remove the $5,009.12 special service charge, and did not restore the scope of her request, even as it released the same category of records to other requesters at no charge.

**F. The post-filing "no records exist" closure of NextRequest No. 26-811.**

36. Plaintiff continues to seek public records from the Defendant concerning the same subject matter. When Plaintiff filed the First Amended Complaint, NextRequest No. 26-811 remained pending. The Defendant began staging responsive records in its records portal in August 2026 but did not release any of those records to Plaintiff until September 16, 2026, weeks later and only after this litigation was underway. The September 16 production was incomplete, and the Defendant continued withholding other responsive records.

37. On September 30, 2026, after the First Amended Complaint was filed, the Defendant closed NextRequest No. 26-811 as complete and stated, "All records have been released, and your request has been fulfilled." As to the category associated with Reginald Johnson, including surviving copies, backups, or images of records that Florida Department of Education Office of Inspector General Report No. 2023-0003 identifies as having been destroyed, the Defendant stated, "No records exist."

38. The representation that no such records exist cannot be reconciled with the findings of the Florida Department of Education Office of Inspector General. Investigative Report 2023-0003 documents that the District "was able to recover all of the deleted files as they were backed up to the Cloud," and that the deleted files "were never in danger of being permanently deleted." The records the Defendant said did not exist in fact existed: they had been

recovered and were within the Defendant's control when it made that representation. The files the Inspector General found deleted and then recovered are the Reginald Johnson records that request 26-811 sought, and they remained retrievable from Cloud backup when the Defendant answered that no such records exist.

39. The Defendant's response to the same request produced no completed Records Disposition Request Form, no disposition authorization, and no destruction certificate, log, or date for the records at issue, as Rule 1B-24.003(6)(d), Florida Administrative Code, requires for each record series lawfully disposed of on an approved retention schedule. Either the records exist, in which case the representation that no records exist is false, or the records were removed outside any lawful schedule, without the documentation the law requires.

40. The September 30, 2026 closure is the latest act in the same retaliatory course of records concealment alleged above: a continued refusal to produce records to the requester who publicly criticized the Defendant's handling of Clayton, now accompanied by a representation that no records exist as to the category associated with Reginald Johnson identified in paragraph 37.

**G. Municipal liability: final policymaking authority, official policy, custom, and ratification.**

41. Under Florida law, the School Board of Duval County, Florida, is the final policymaking authority for the District's public-records compliance and records retention. That authority encompasses policy governing special service

charges, search scope, production timing, exemption decisions, retention practices, and corrective action for deleted or recovered records. Fla. Const. art. IX, section 4(b); Fla. Stat. section 1001.32. No official or body within the District has superior authority over those functions. Whether an official or body is a final policymaker is a question of state law. See Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986) (plurality opinion); Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989).

42. The challenged records decisions were the Defendant's official positions, issued in the agency's name through its records-compliance function: the approximately $5,009.12 special service charge; the unrequested narrowing of item 6; the continued withholding of responsive records; the failure to produce recovered responsive records; and the September 30, 2026 closure of NextRequest No. 26-811 with the representation that no records exist as to the category associated with Reginald Johnson identified in paragraph 37. These were final agency determinations, not the isolated or rogue acts of an individual employee. A single decision by a municipality's final policymaking authority, on a matter within that authority, is itself official policy for purposes of 42 U.S.C. section 1983. See Pembaur, 475 U.S. at 480-481.

43. The School Board is the agency responsible for the District's public records under Chapter 119, Florida Statutes. Under Florida law, the School Board, not the Superintendent or any subordinate custodian, is the final policymaking authority for the District. See Chabad Chayil, Inc. v. School Board of Miami-

Dade County, 48 F.4th 1222, 1230-31 (11th Cir. 2022). A requester who disputes a special service charge, a narrowed request, a withholding, or a no-records determination has no administrative appeal to any higher authority within the District; Florida law directs the review of those determinations to the courts, not to a superior District policymaker. See Fla. Stat. section 119.11; Scott v. Lee County School Board, 310 So. 3d 163, 165 (Fla. 2d DCA 2021); United Faculty of Florida v. Branson, 350 So. 2d 489, 492 (Fla. 1st DCA 1977). To the extent subordinate custodians carried out the decisions challenged here, they acted under authority delegated by, and answerable to, the School Board, and their determinations were not subject to meaningful review by any separate final policymaker within the District. The School Board retained and exercised final authority over the District's public-records functions.

44. Independent of any single decision, the Defendant maintained a persistent and widespread custom of concealing public records and information concerning reported misconduct from disfavored requesters. The alleged methods included delay, excessive special-service charges, unilateral narrowing of requests, unsupported representations that requested records did not exist, and deletion or non-retention without the recordkeeping Florida law requires. That custom is reflected in, among other things:

(a) the direction that written student complaints about Clayton be routed to the principal alone;

(b) the disappearance of the written statement Plaintiff entrusted to the principal in 2011, of which Plaintiff retained a contemporaneous copy, and the continued non-production of the extensive 2013 interview notes;

(c) the deletion, while Plaintiff's request was pending, of approximately 290 files, including multiple public-records requests and educator-misconduct reporting forms, during early-morning building access;

(d) the imposition on Plaintiff of an approximately $5,009.12 special service charge and an approximately twenty-two-month withholding of records that the Defendant produced to other requesters promptly and at little or no charge;

(e) the September 30, 2026 closure of NextRequest No. 26-811 with a representation that no records exist as to the category associated with Reginald Johnson identified in paragraph 37, even though the Florida Department of Education Office of Inspector General documented that the deleted files had been recovered; and

(f) the District's July 30, 2026 directive to run electronic searches for records in categories it then certified did not exist, as alleged in paragraph 45.

The custom was sufficiently permanent and settled to constitute the Defendant's de facto policy. See Grech v. Clayton County, 335 F.3d 1326, 1329-30 (11th Cir. 2003) (en banc); Craig v. Floyd County, 643 F.3d 1306, 1310-11 (11th Cir. 2011); McDowell v. Brown, 392 F.3d 1283, 1290 (11th Cir. 2004).

45. The District's own records show that it searched for the records it later certified did not exist. On July 30, 2026, in connection with request 26-773, Cami Sams directed information-technology staff, including James Moore, to "run the following searches and place the .pst in this file," expressly "related to the ongoing litigation Rita Mairs is handling for the District." The directed searches targeted the subjects of categories 3 and 5 of the request, and the instruction itself reflected that the volume of responsive email was substantial. The District nonetheless responded "No Records" as to those same categories. The directive was circulated beyond a single custodian. Bates LOAR000376-378. The District thus directed a search for records in the very categories it represented did not exist.

46. The Defendant had actual or constructive knowledge of the disparate charge, the withholding, the deletion and recovery of responsive records, and the later no-records representation. That knowledge came through multiple channels independent of any outside investigation. A School Board member referred the matter to the Florida Department of Education Office of Inspector General; the District's then General Counsel provided documentation of the deletion and confirmed recovery of the files from cloud backup; the Inspector General issued Investigative Report 2023-0003 documenting the deletion and recovery; District policy required the results of such investigations to be reported to the School Board and its General Counsel's office; and Plaintiff personally provided the District's retained investigator both her complete

history of reports concerning Clayton and the $5,009.12 cost estimate. The Defendant therefore knew that responsive records existed and had been recovered when it maintained the charge and withholding and made the category-specific no-records representation identified in paragraph 37.

47. With that knowledge, the Defendant, acting through its final policymaker, reviewed and affirmatively approved both the challenged records decisions and their retaliatory and disparate basis. The Defendant did not merely decline to overturn a subordinate's decision. It deliberately left the $5,009.12 special service charge, the narrowed scope of item 6, and the nonproduction in place as to Plaintiff, even after responsive records had been recovered and while the same records were released to others without charge, thereby ratifying the retaliatory and disparate treatment of Plaintiff at the policymaking level.

48. The Defendant further ratified the challenged conduct through an investigation it commissioned, funded, and relied upon. It retained the law firm of Weiss, Serota, Helfman, Cole and Bierman, and investigator David M. Delaney, to examine the District's handling of Clayton. On or about January 6, 2024, Plaintiff provided Mr. Delaney her complete history of reports concerning Clayton and the Defendant's $5,009.12 cost estimate. The Defendant paid the firm more than $102,000. The report the Defendant received in or about late June 2024 omitted Plaintiff's reports and the treatment of her records request. After receiving and relying on the report, the

Defendant took no corrective action to remove the charge, restore the scope of Plaintiff's request, or produce the withheld records. The omission of information Plaintiff had supplied to the investigator is an additional alleged instance of the District's custom of concealment; the Defendant's knowledge of the challenged treatment, however, did not depend on the report.

49. The Defendant acted with deliberate indifference to the known and obvious consequences of its custom and decisions. The Defendant's final policymaking authority, official policy, custom, and ratification of the challenged conduct were the moving force behind the violations of Plaintiff's First and Fourteenth Amendment rights alleged in this Complaint. See Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404, 410 (1997); City of Canton v. Harris, 489 U.S. 378, 388-89 (1989).

**H. The withholding remains unremedied, and the threat of further harm is ongoing.**

50. The retaliatory and disparate treatment alleged above has not been remedied and is ongoing. Records responsive to Plaintiff's requests remain withheld, and the Defendant's September 30, 2026 representation that no records exist as to the category associated with Reginald Johnson identified in paragraph 37 is the most recent act in that course of conduct. Plaintiff continues to seek public records from the Defendant concerning the same subject matter. In addition to the past injuries alleged, Plaintiff therefore suffers a present and continuing injury and faces a real and immediate threat that, because of her protected

speech and petitioning, the Defendant will continue to impose disparate charges, narrow or alter her requests, withhold responsive records, or make unsupported no-records representations concerning particular requested categories.

## TIMELINESS

51. A claim under 42 U.S.C. section 1983 arising in Florida is governed by the four-year residual limitations period for personal injury actions. The conduct alleged, including the special service charge, the narrowing of Plaintiff's request, the continued withholding of records, and the September 30, 2026 representation that no records exist as to the category associated with Reginald Johnson identified in paragraph 37, began in 2023 and continues to the present.

## PLAINTIFF'S PENDING STATE-COURT ACTION

52. Plaintiff has a separate Chapter 119 action pending in the Circuit Court of the Fourth Judicial Circuit, in and for Duval County, Florida, seeking production of withheld records and statutory relief, including attorney fees and costs under section 119.12. That action concerns production under state law; it does not provide damages for constitutional retaliation, adjudicate municipal policy or motive, or resolve whether Plaintiff was punished for protected speech.

53. This federal action therefore requires different proof, seeks different remedies, and challenges different conduct. Plaintiff does not plead a Chapter 119 claim

here, seek review of any state-court ruling, or ask this Court to supervise the state action.

## CAUSES OF ACTION

The constitutional violations alleged below were not isolated administrative errors. They resulted from the Defendant's final policymaking authority, official policy, settled practices, and ratification of the challenged records decisions, including the special service charge, the narrowing of Plaintiff's request, the continued withholding, the failure to produce recovered responsive records, and the representation that no records exist as to the category associated with Reginald Johnson identified in paragraph 37.

## COUNT I

### 42 U.S.C. section 1983: First Amendment Retaliation

54. Plaintiff realleges paragraphs 1 through 53.

55. Plaintiff engaged in protected activity as a private citizen when she reported Clayton's conduct to district officials in 2013, 2020, and 2022; spoke to the news media on March 23, 2023, about the Defendant's handling of educator misconduct; and submitted Chapter 119 records requests. She was not a district employee when she spoke, requested records, or suffered retaliation, and the Defendant acted as a public agency, not her employer.

56. The Defendant took adverse action by imposing the $5,009.12 special service charge, narrowing and altering Plaintiff's request, continuing to withhold responsive records, failing to produce recovered responsive records, and

representing that no records exist as to the category associated with Reginald Johnson identified in paragraph 37, acts that, individually and in the aggregate, would deter a person of ordinary firmness from continuing protected activity. See Bennett v. Hendrix, 423 F.3d 1247, 1252, 1254 (11th Cir. 2005), abrogated in part on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009).

57. The causal connection is shown by knowledge, disparate treatment, and the Defendant's own documentation: the challenged conduct followed Plaintiff's public statements and records request, after the Defendant knew of her prior reports concerning Clayton; other requesters received comparable Clayton records without the same charge, narrowing, or delay; and the Defendant's stated reasons are refuted by the Florida Department of Education Office of Inspector General's documentation establishing that responsive records were deleted, recovered, and within its control when it maintained the charge and withholding and represented that no records exist as to the category associated with Reginald Johnson identified in paragraph 37.

58. Acting under color of state law, the Defendant burdened Plaintiff's protected speech and petitioning because of that protected activity, violating her First Amendment rights.

59. The violation resulted from the Defendant's final policymaking authority, official policy, custom, and the ratification of the challenged conduct by the Defendant's final policymaker, as alleged in paragraphs 41 through 49, which

were the moving force behind the violation of Plaintiff's First Amendment rights.

60. As a direct and proximate result, Plaintiff suffered injury, including the deprivation of her constitutional rights, the costs of pursuing the records, emotional distress, mental anguish, humiliation, and loss of enjoyment of life, and other damages to be proven at trial.

**COUNT II**
**42 U.S.C. section 1983: First Amendment Viewpoint Discrimination in the Administration of Public Records**

61. Plaintiff realleges paragraphs 1 through 53. This Count is pleaded separately from, and in addition to, Count I.

62. In the Eleventh Circuit, First Amendment viewpoint discrimination and First Amendment retaliation are distinct causes of action with different elements, and a plaintiff may plead both arising from the same government conduct. See *Jarrard v. Sheriff of Polk Cnty.*, 115 F.4th 1306 (11th Cir. 2024).

63. The Defendant administers a process, under Chapter 119, Florida Statutes, and Article I, Section 24 of the Florida Constitution, through which any person may request and obtain public records. That process is a channel of access the Defendant has opened to the public, and the Defendant's administration of it is subject to the First Amendment's prohibition on viewpoint discrimination. See *Jarrard*, 115 F.4th 1306; *McDonough v. Garcia*, 116 F.4th 1319 (11th Cir. 2024); *Cook v. Gwinnett Cnty. Sch. Dist.*, 414 F.3d 1313 (11th Cir. 2005).

64. The prohibition against viewpoint discrimination applies in every forum, including a nonpublic or limited forum. Even where the government may limit the subject matter of a forum, it may not administer access to that forum so as to disfavor a speaker because of the speaker's viewpoint. See *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819 (1995); *Cook*, 414 F.3d 1313; *Searcey v. Harris*, 888 F.2d 1314, 1324-25 (11th Cir. 1989).

65. Plaintiff engaged in speech and petitioning activity protected by the First Amendment, including her public criticism of the Defendant and its officials and her submission of public-records requests to the Defendant. A citizen's public-records requests and lawsuits against the government are protected First Amendment activity. See *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277 (11th Cir. 2019).

66. Plaintiff was, and was known to the Defendant to be, a public critic of the Defendant.

67. The Defendant administered its public-records process against Plaintiff in a manner it did not apply to requesters who had not criticized the Defendant. As to Plaintiff, the Defendant (a) quoted an excessive special service charge of approximately $5,009.12 as a condition of production; (b) restated item 6 of her request more narrowly than she had submitted it; and (c) later represented that no responsive records existed.

68. During the same period, the Defendant provided the same or materially similar records promptly, and at little or no charge, to requesters who had not

publicly criticized the Defendant, including the news organizations, law firms, and other parent identified in paragraphs 24 through 30, whose requests concerned the same educator and the same public controversy and which the Defendant closed, in substantial part, on or about April 20, 2023, regardless of when each such request was submitted.

69. Those requesters were similarly situated to Plaintiff in all respects material to an objectively reasonable records custodian: each sought the same or overlapping categories of Clayton records from the same custodian, concerning the same educator and public controversy, during the same period. The sole material difference between Plaintiff and those requesters was Plaintiff's publicly expressed viewpoint critical of the Defendant. See *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269 (11th Cir. 2008); *Campbell v. Rainbow City*, 434 F.3d 1306 (11th Cir. 2006).

70. The Defendant's differential treatment of Plaintiff was not a single, isolated act. It formed part of a persistent pattern, alleged in paragraphs 44 through 48, in which the Defendant administered its public-records process to favor requesters not critical of it and to burden requesters, including Plaintiff, who had publicly criticized it.

71. The Defendant's imposition of the special service charge, narrowing of the request, and representation that no responsive records existed were pretextual. A facially neutral or facially reasonable administration of the records process does not insulate the Defendant where that administration is in fact a facade

for viewpoint-based discrimination. See *Searcey v. Harris*, 888 F.2d 1314, 1324-25 (11th Cir. 1989).

72. The Defendant targeted Plaintiff because of her viewpoint. Its conduct constitutes viewpoint discrimination, which is presumptively unconstitutional and subject to strict scrutiny, a burden the Defendant cannot satisfy; a rational or merely legitimate justification does not suffice. See *Honeyfund.com Inc. v. Governor*, 94 F.4th 1272 (11th Cir. 2024); *Vidal v. Elster*, 602 U.S. 286 (2024); see also *Otto v. City of Boca Raton*, 981 F.3d 854 (11th Cir. 2020).

73. In the alternative, and to the extent access to public records under Chapter 119 is treated as a governmental benefit, the Defendant may not grant or deny that benefit on a basis that penalizes Plaintiff's protected speech or viewpoint, even though there is no general First Amendment right of access to government records. See *Perry v. Sindermann*, 408 U.S. 593 (1972); *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668 (1996); *O'Hare Truck Serv. v. City of Northlake*, 518 U.S. 712 (1996).

74. The challenged records decisions were made by, or under the authority of, the Defendant as the final policymaking authority over the District's public-records administration under Florida law, as alleged in paragraphs 41 through 43. A single decision by such a final policymaker, on a matter within that authority, is itself official policy sufficient to establish the Defendant's liability. See *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986); *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade*

*Cnty.*, 48 F.4th 1222 (11th Cir. 2022); *Cooper v. Dillon*, 403 F.3d 1208 (11th Cir. 2005).

75. In the further alternative, the Defendant's viewpoint-based administration of its public-records process was a widespread and well-settled custom or practice, as alleged in paragraphs 44 through 49, of which the Defendant's policymaking officials had actual or constructive knowledge and which they failed to correct, and that custom was the moving force behind the violation of Plaintiff's rights. See *Monell*, 436 U.S. 658; *Baxter v. Roberts*, 54 F.4th 1241 (11th Cir. 2022); *Griffin v. City of Opa-Locka*, 261 F.3d 1295 (11th Cir. 2001).

76. Acting under color of state law, the Defendant discriminated against Plaintiff in the administration of its public-records process because of her viewpoint, violating her rights under the First Amendment.

77. As a direct and proximate result, Plaintiff suffered injury, including the denial and delay of records to which she was entitled, the burden of an unlawful charge, the chilling of her protected speech, emotional distress, mental anguish, humiliation, and loss of enjoyment of life, and other damages to be proven at trial.

**COUNT III**
**42 U.S.C. section 1983: Equal Protection (in the alternative)**

78. Plaintiff realleges paragraphs 1 through 53. This Count is pleaded in the alternative to Counts I and II.

79. The Defendant intentionally treated Plaintiff differently from similarly situated requesters, including Dan Scanlan, Lauren Inderhees, Claire Heddles, the Morcom law firm, the additional reporters and law firms identified above, and another Douglas Anderson parent. Each sought Clayton personnel, investigative, or disciplinary records from the same custodian, concerning the same educator and public controversy, during the same period, and received them promptly and at little or no charge.

80. Those requesters were prima facie identical to Plaintiff in all relevant respects and cannot reasonably be distinguished from her. No rational basis supports the disparity: the Defendant had already compiled the Clayton records, produced part of them to Plaintiff, then quoted her an approximately $5,009.12 special service charge and withheld the balance for approximately twenty-two months, while producing the same records to others at no charge, on the basis that Clayton was a former, resigned employee whose investigation was no longer active. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam).

81. Acting under color of state law, and pursuant to the Defendant's final policymaking authority, official policy, custom, and ratification as alleged in paragraphs 41 through 49, the Defendant intentionally treated Plaintiff differently from similarly situated requesters without rational basis, violating her right to equal protection.

82. As a direct and proximate result of the Defendant's equal-protection violation, Plaintiff suffered injury, including the deprivation of her constitutional rights, the costs of pursuing the records, emotional distress, mental anguish, humiliation, and loss of enjoyment of life, and other damages to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor on Count I or Count II, or in the alternative, Count III, and grant the following relief:

a. Declare that the Defendant's conduct violated Plaintiff's rights under the First Amendment or, in the alternative, the Fourteenth Amendment, including by retaliating against Plaintiff and by discriminating against her in the administration of public records because of her viewpoint;

b. Enjoin the Defendant from continuing to retaliate against Plaintiff or, in the alternative, from treating Plaintiff's present and future public-records requests differently from similarly situated requesters without a rational basis;

c. Award nominal damages; compensatory damages, including damages for emotional distress, mental anguish, humiliation, and loss of enjoyment of life; and any other damages recoverable under 42 U.S.C. section 1983;

d. Award reasonable attorney fees, paralegal fees, litigation expenses, and costs under 42 U.S.C. section 1988;

e. Grant all other relief the Court deems just and proper

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 16, 2026.

Respectfully submitted,

**MOSER LAW PLLC**

/s/ Christina Lawrence-Moser
Christina Lawrence-Moser, Esq.
Florida Bar No. 0563900
P.O. Box 840250
St. Augustine, Florida 32080
(904) 754-8611
moserlaw@gmail.com
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 16, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will serve a notice of electronic filing on all counsel of record.

/s/ Christina Lawrence-Moser
Christina Lawrence-Moser, Esq.